IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. KEYS, JR, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES STEEL CORPORATION, and USX CORPORATION, <br><br> Defendants. | Civil Action No. 2:21-cv-655 <br><br> Action under special rules of seamen to sue without security or prepayment of fees for the enforcement of the laws of the United States, Common and statutory, for the protection of the health and safety of seamen at sea, Title 28, U.S. Code §1916 |

## COMPLAINT

AND NOW comes the Plaintiff, WILLIAM J. KEYS, JR, by his attorneys, THE MOSCHETTA LAW FIRM, P.C., and files this Complaint as follows:

1. Jurisdiction arises and Plaintiff brings and maintains this action under the Jones Act, 46 U.S.C §§30104, 30105, and 30106 (formerly 46 U.S.C. §688, 41 Stat. 1007 (1920)), and pursuant to the General Maritime Law, Article III, Section 2 of the Constitution of the Untied States, and §1916 of the Judicial Code, 28 U.S.C. §1916. This is an admiralty or maritime claim within the meaning of F.R.C.P. 9(h).

2. Plaintiff, **WILLIAM J. KEYS, JR**., is an adult individual who resides in Tarrs, Westmoreland County, Pennsylvania; his post office address is 192 Central Road, Tarrs, PA 15688.

3. Defendant, **UNITED STATES STEEL CORPORATION**, is a Delaware corporation having a principal office and place of business in Pittsburgh, Allegheny County, Pennsylvania; its post office address is 600 Grant Street, Room 1500, Pittsburgh, PA 15219. Its

{CLIENT FILES/8581/1/PLEAD/00103611.DOC}

registered agent for service of process is Corporation Services Company, 251 Little Falls Drive, Wilmington, DE 19808.

4. Defendant, **USX CORPORATION**, is a Delaware corporation having a principal office and place of business in Pittsburgh, Allegheny County, Pennsylvania; its post office address is 600 Grant Street, Room 1500, Pittsburgh, PA 15219. Its registered Agent for services of process is Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808.

5. Unless otherwise specified, Defendants, United States Steel Corporation and USX Corporation shall be referred to hereinafter collectively as "U.S. Steel" or "Defendants".

6. At all times relevant hereto, Defendants owned, operated, directed, controlled, managed and caused to be navigated, as well as to be outfitted, manned, and maintained in commercial navigation on the navigable waters of the United States, including the Monongahela River, motor-powered vessels, including, among others, the Motor Vessel USS-4 and fleets of barges along the Monongahela River at Clairton, Pennsylvania.

7. Defendants, USX Corporation and United States Steel Corporation, are the owners, owners *pro hac vice* and/or operators of the Motor Vessel USS-4 (hereinafter "M/V USS-4") and fleets and tows of barges, located on the Monongahela River, at Clairton, Allegheny County, Pennsylvania. The M/V USS-4's U.S. Coast Guard number is 267971. The history of the M/V UUS-4 is as follows:

> Twin screw towboat built in 1954 by Dravo Corp., Neville Island, PA; rebuilt 2008 by River Salvage Co., Neville Island. 70 x 20.1. Cat D353 diesels, repowered 1980, 850 hp Kort nozzles. Original CAP'N JOE, owned by Edward F. Smith, Inc., Pittsburgh. Sold March 1967 to Campbell Barge Line, Pittsburgh. Sold June 1976, renamed GRIFFITH C by Greater Cincinnati Marine Service, Inc., KY. Sold 2005, renamed HELEN Z June 2006 by Ohio River Salvage LLC, Crescent, PA. Sold March 2008, renamed by USX Corp., Clairton, PA.

8.      On or about June 28, 2018, Plaintiff, William J. Keys, Jr., was a seaman, and member of the crew of the M/V USS-4, acting within the course and scope of his employment as a Deckhand with Defendants, in navigation at or near Mile 18 on the Monongahela River within the territorial boundaries of the Commonwealth of Pennsylvania at Clairton, Allegheny County, Pennsylvania.

9.      On June 28, 2018, the M/V USS-4 was crewed by a substitute pilot, one mate and one deck hand (Plaintiff).  This vessel was understaffed because it was required to have a pilot and a deck crew of three persons, i.e. a mate and two deckhands.  See ARBITRATION AWARD dated May 20, 1983, Case No. USS-18, 650 involving U.S. STEEL CORPORATION EASTERN STEEL DIVISION, Clairton Plant Mon Valley Works and UNITED STEEEL WORKERS OF AMERICAN Local Union No. 1557 subject: Crew size. **Exhibit 1**.

10.     At the time and place of the incident hereinafter mentioned, the M/V USS-4 was moored parallel to a jumbo barge (ING 2138), facing south, which impaired the pilot's visibility of the Plaintiff, who was assigned to work on the northwest corner on the ING 2138.  At that time, the pilot was facing south (upstream) observing the south end of the ING 2138 barge as he was attempting to pull away from the dock.  To the extent that the pilot had looked to his right to see the Plaintiff, his view was obstructed by the corner of the pilothouse, a ladder and the pillars that uphold the pilothouse roof.

11.     The Motor Vessel USS-4 is not equipped with "towknees"[1] and consequently, does not usually "face up" to vessels in the traditional sense.  Instead, she typically comes alongside a barge (parallel) so that the crew can secure two (2) lines from deck fittings on the barge to the motor vessel, as per U.S. Steel Safe Job Procedure Standards.  One line is secured to the capstan

---

[1] Heavy triangular braces on the head of a towboat which bear against the barges

on the forecastle (front) of the motor vessel and a second line is secured to the aft (back) capstan. At the time of the incident hereinafter alleged, the vessel was using only one (1) line to secure the capstan located on the forecastle (front) of the motor vessel to the ING 2138 barge.

12. The Defendants were guilty of negligence in ordering the jumbo barge (ING 2138) be moored at the Clairton Wharf for the following reasons:

a) The Defendant's marine facility at the Clairton Wharf was originally designed and constructed with deadmen[2] suited for only "standard" size barges which measure 175 feet in length.

b) With the advent of longer barges, (i.e. jumbo barges – 200 feet in length and stumbo barges 195 feet in length), the Defendants negligently failed to design, construct and install additional deadmen with which to safely moor jumbo and stumbo barges at the Clairton Wharf.

c) Because of the Defendants failure to add deadmen to the wharf, the Deck Crews of Defendants' motor vessels were required to utilize lengthy lines from the existing deadmen to secure the barges. These lengthy lines of necessity crossed over the ends of the jumbo/stumbo barges moored at the wharf. Also, these lengthy lines enabled the fleeted barges to surge back and forth when the barge operations were occurring.

d) The use of the long PolyPlus[3] mooring lines from the deadman created a safety hazard because these lines had to cross over the top of other nearby barges and would get caught and fouled in their rigging. Adding additional deadmen so as to facilitate the use of shorter, more direct lines running from the deadman to the moored barges, would have eliminated a snagging/catching hazard with other nearby barges, i.e. jumbo ING 2138, and their rigging.

e) The safety hazard created by using these long lines would thereby be eliminated because a short line going directly from the deadmen to the moored barge would not cross over adjoining barges and therefore not able to get caught in their rigging.

---

[2] A deadman is defined as a heavy anchor, usually concrete, embedded in the riverbank to secure a mooring line or a tie back to a wall.

[3] PolyPlus lines are defined as a soft rope made of polypropylene and blends of other synthetic fibers. PolyPlus is highly elastic, the elongation percentage at a load of 30% of breaking strength for a 50-foot line would stretch 2 additional feet, which would let the fleeted barges surge in an unacceptable manner.

      f)      U.S. Steel management had been advised that the long spring and head lines were not needed under normal operations and river conditions – this presented an unnecessary safety hazard to the deck crew as set forth above.

13. On June 28, 2018, the Defendants ordered the pilot of the M/V USS-4 to retrieve (remove) and deliver the empty jumbo barge number ING 2138 moored at the Clairton Wharf and relocate it to the Destock conveyor. By way of explanation, the Destock Conveyor is a dock where product from the Coal Storage (the area where coal is stored on the ground) is loaded into barges via the conveyor.

14. After the M/V USS-4 arrived at the Clairton Wharf area (empty fleet), the Plaintiff was peremptorily ordered to board barge ING 2138 and untie the head and stern lines, which secured said barge to the wharf. After the Plaintiff untied the head and stern lines, the M/V USS-4 was still unable to navigate the said barge away from the wharf because the spring and head lines referenced in paragraph 12 above repeatedly became fouled on the rigging of ING 2138 barge.

15. U.S. Steel negligently failed to update its Clairton Wharf marine facility by adding additional deadmen to accommodate the mooring of stumbo and jumbo barges at this wharf. As a result thereof the following events occurred:

      a)      The Pilot started to pull empty barge ING 2138 out, when the spring line (the line running from the deadmen to the Defendant's other moored barge south/upstream of the ING 2138) got caught (fouled) in the deck rigging located on the south end of the ING 2138.

      b)      Plaintiff was peremptorily ordered to re-board the barge and free the spring line caught in the rigging.

      c)      The pilot again attempted to back the vessel away when the head line – running from the deadman to the Defendant's other nearby moored barge north/downstream of the ING 2138 – got caught/fouled on the barge winch.

      d)      When the spring or head lines were fouled on the barge's deck rigging and the Pilot moved the motor vessel causing the PolyPlus lines to stretch

      (elongate) and break free of the rigging, this caused the line to violently spring back and strike any deck crew member in its way.

    e)    Plaintiff was assigned to free the head line (which was fouled in the barge winch), when the pilot suddenly and without warning to Plaintiff, negligently backed the M/V USS-4 out, which in turn caused the head line – under extreme tension – to free itself from the barge winch and violently strike the Plaintiff with such force that his body became airborne and fell approximately fifteen (15) feet into the bottom of the empty ING 2138 barge hold.

    f)    The Pilot was negligent in moving the motor vessel at a time when the deckhand was still aboard barge ING 2138, and exposed to the hazards described above. Had the pilot waited until the Plaintiff not only cleared the headline, but returned to the motor vessel before attempting to move the barge, the risk of the Plaintiff being struck by the line and injured would have been eliminated.

16.    As a result of this occurrence, Plaintiff sustained personal injuries, damages and permanent impairments, including among others, as follows:

    a)    Trauma to the chest area resulting in the following:

        (1)    Fractured rib from 3 to 10 on the left and ribs 4 through 8 on the right;

        (2)    Severe pulmonary contusion requiring intubation and placement of bilateral chest tubes;

        (3)    Bilateral pneumothoraces (an abnormal amount of gas or air in the pleural cavity);

        (4)    Extensive subcutaneous emphysema;

        (5)    Acute respiratory insufficiency;

        (6)    Pneumomediastinum (air present in the mediastinum - the space in the chest between the two lungs);

        (7)    Hematomas in in the left retroperitoneal spaces (located behind the peritoneum which lines the cavity of the abdomen) and in the left posterolateral abdominal wall; and

        (8)    Significant chest pain requiring medical management.

    b)    Trauma to the right hip resulting in the following:

        (1)    Right posterior wall acetabular fracture requiring Open Reduction of Internal Fixation with allograft;

        (2)    Hypotension secondary to blood loss and hypovolemia (dangerous condition that occurs with a sudden loss of a lot of blood or fluids from the body) from the right hip;

        (3)    Traumatically induced arthritis to the right hip; and

        (4)    Scar disfigurement from his right knee up to his tailbone;

        (5)    Scars and disfigurement on the thoracic spine and both sides of his chest.

    c)    Trauma to his thoracic and lumbar spine:

        (1)    Dislocated fracture at T4-5 through the disc space with facet distraction requiring Posterior fusion with Internal Fixation through T3-T6;

        (2)    Left transverse fracture through T12 through L5;

        (3)    Anterior column fracture at L3;

        (4)    Activation/Aggravation of dormant, pre-existing, bilateral Sciatica, more on the left;

        (5)    Traumatically induced arthritis to the thoracic and lumbar area; and

        (6)    Left Flank soft tissue contusions.

    d)    Closed head injury/Traumatic Brain Injury:

    e)    Traumatically induced Amnesia;

    f)    Neuropathy in both feet;

    g)    Post-traumatic Stress Disorder requiring medication;

    h)    Stress related Alopecia;

    i)    Hyperactivity delirium requiring medications while hospitalized:

    j)    Multiple contusion and lacerations of the head, back, hip and lower extremities;

    k)    Other serious and severe injuries; and

    l)    Injury and damage to the bones, muscles, nerves, nerve roots, ligaments, tendons, cartilages, blood vessels, soft tissues and underlying organs in the following areas:

        (1)    Chest;

        (2)    Thoracic spine;

        (3)    Lumbar spine;

        (4)    Right hip;

        (5)    Head;

        (6)    Brain:

        (7)    Bilateral feet; and

        (8)    Severe shock and injury to the various body systems, including nervous system, both organic and functional in nature;

## **COUNT I – UNSEAWORTHINESS**

*Wialliam J. Keys, Jr.*

*v.*

*United States Steel Corporation & USX Corporation*

AND AS FOR A <u>FIRST</u>, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF ALLEGES:

17.    Paragraphs 1 through 16 are incorporated herein by reference.

18.     As owner and operator of the M/V USS-4, Defendants owed to the Plaintiff-seaman an absolute and non-delegable duty to provide him with a safe place to work and furnish a safe, seaworthy vessels, appurtenances, equipment, personnel and Maritime facilities.

19.     Notwithstanding these duties and warranties, Defendants breached their above-mentioned duties by failing to provide Plaintiff with a safe place to work, seaworthy vessels, as well as seaworthy appurtenances, equipment, personnel, pilot, captain, dock facilities, and by virtue of the conditions set forth in paragraphs 9 through 16 above.

20.     The injuries and impairments sustained by the Plaintiff-seaman were proximately caused and/or substantially contributed to by the unseaworthiness of the M/V USS-4, as stated above.

21.     As a direct result of his injuries, Plaintiff-seaman suffered permanent impairments and has been otherwise damaged, including pain and suffering, past and future; loss of earnings and impairment of earning power, past and future; loss of enjoyments of life and well-beings, past and future; and the cost of medical and hospital services, past and future.

## COUNT II – JONES ACT NEGLIGENCE

*William J. Keys, Jr.*
*v.*
*United States Steel Corporation & USX Corporation*

AND AS FOR A <u>SECOND</u>, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF ALLEGES:

22.     Paragraphs 1 through 21 are incorporated herein by reference.

23.     Under the Jones Act, Defendants owed a duty to the Plaintiff-seaman to provide him with a safe place to work and furnish safe, seaworthy vessel, appurtenances and personnel.

24. Notwithstanding these duties, Defendants were negligent by failing to provide Plaintiff with a safe place to work while working aboard the vessel and to furnish safe, seaworthy vessels, appurtenances, equipment, training, personnel and maritime facilities.

25. The injuries and impairments sustained by Plaintiff-seaman were caused and contributed to, in whole or in part, by the negligence of Defendant corporations in their own right and through their officers, supervisors, agents, servants and/or employees, masters and officers of the M/V USS-4, acting within the scope of their respective employment, as set out above.

26. Notwithstanding these duties and warranties, Defendants breached their above mentioned duties by failing to provide Plaintiff with a safe place to work, and seaworthy vessels, appurtenances, equipment, personnel and maritime facility by virtue of the conditions, defects and hazards on the Defendants' vessels as set forth in paragraphs 9 through 16 above.

27. As a direct result of his injuries, Plaintiff-seaman suffered permanent impairments and has been otherwise damaged, including pain and suffering, past and future; loss of earnings and impairment of earning power, past and future; loss of enjoyments of life and well-beings, past and future; and the cost of medical and hospital services, past and future.

## COUNT III – MAINTENANCE AND CURE

*William J. Keys, Jr.*
*v.*
*United States Steel Corporation & USX Corporation*

AND AS FOR A <u>THIRD</u>, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF ALLEGES:

28. Paragraphs 1 through 27 are incorporated herein by reference.

29. As a result of Plaintiff-seaman's injuries and impairments, he has been, and still is, entitled to adequate maintenance and cure and it has been the duty of the Defendants to furnish the same.

30. To date, Defendants have, for the most part, discharged their duty to provide maintenance and cure as required under the General Maritime Law. Specifically, Defendants have paid for most, if not all medical expenses ("cure") to date.

31. Plaintiff is entitled to a fair and reasonable rate of Maintenance of at least $50.00 per day for those days on which he is unable to work due to his injuries, as well as the costs of future medical and/or surgical care and expenses, a claim for which is hereby made.

WHEREFORE, Plaintiff-seaman, WILLIAM J. KEYS, JR, demands judgment against the Defendants, UNITED STATES STEEL CORPORATION, and USX CORPORATION, jointly and/or severally under each counter hereinabove, for an amount in excess of $75,000.00, plus interest and costs.

Respectfully submitted,

THE MOSCHETTA LAW FIRM, P.C.
Court Square Building
28 West Cherry Avenue
Washington, PA  15301
(724) 225-3060 Phone
(724) 225-7311 Fax

By:___s/Stephen P. Moschetta_____
     Stephen P. Moschetta, Esq.
     PA ID No. 81495


By:___s/Joseph P. Moschetta_____
     Joseph P. Moschetta, Esq.
     PA ID No. 05480

**Attorneys for Plaintiff**